In a hybrid proceeding pursuant to CPLR article 78 to review three determinations of the Planning Board of the Town of Ramapo, all dated March 22, 2013, which granted three separate applications of the respondent Scenic Development, LLC, for final subdivision and site plan approval of three housing development projects, respectively, and action for injunctive relief, the petitioners/plaintiffs appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Rockland County (Walsh II, J.), dated May 19, 2014, as, in effect, denied the petition and dismissed the proceeding.
 

 Ordered that the judgment is reversed insofar as appealed from, on the law, with one bill of costs payable by the respondents appearing separately and filing separate briefs, the petition is granted, the determinations dated March 22, 2013, are annulled, and the matter is remitted to the Planning Board of the Town of Ramapo for further proceedings consistent herewith.
 

 In three determinations, all dated March 22, 2013, the Planning Board of the Town of Ramapo (hereinafter the Planning Board) granted three separate applications, respectively, of the respondent Scenic Development, LLC (hereinafter Scenic), for final subdivision and site plan approval for portions of a planned housing development on property it owns in the Town of Ramapo (hereinafter the project). The petitioners/plaintiffs (hereinafter the petitioners) commenced this hybrid proceeding/ action challenging those approvals, contending that a Supplemental Environmental Impact Statement (hereinafter SEIS) is needed. Insofar as appealed from, the judgment, in effect, denied the petition and dismissed the proceeding.
 

 “ ‘[I]n a proceeding seeking judicial review of administrative action, the court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the decision or whether it is arbitrary and capricious’ ” (Matter of Fogelman v New York State Dept. of Envtl. Conservation, 74 AD3d 809, 810 [2010], quoting Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987]; see Matter of Suffolk County Assn. of Mun. Empls., Inc. v Levy, 133 AD3d 676, 677 [2015]). This is true even where the court would have reached a different result (see Matter of Terrace Ct., LLC v New York State Div. of Hous. & Community Renewal, 18 NY3d 446, 454 [2012]; Matter of Deerpark Farms, LLC v Agricultural & Farmland Protection Bd. of Orange County, 70 AD3d 1037, 1038 [2010]). “An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts” (Matter of Deerpark Farms, LLC v Agricultural & Farmland Protection Bd. of Orange County, 70 AD3d at 1038).
 

 Judicial review of an agency determination under the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) is “limited to whether the agency procedures were lawful and whether the agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination” (Matter of Village of Kiryas Joel, N.Y. v Village of Woodbury, N.Y., 138 AD3d 1008, 1011 [2016] [internal quotation marks omitted]; see Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986]; Matter of Falcon Group Ltd. Liab. Co. v Town/Village of Harrison Planning Bd., 131 AD3d 1237, 1239 [2015]). “[A]n agency, acting as a rational decision maker, must have conducted an investigation and reasonably exercised its discretion so as to make a reasoned elaboration as to the effect of a proposed action on a particular environmental concern” (Akpan v Koch, 75 NY2d 561, 571 [1990]). However, “ ‘[i]n a statutory scheme whose purpose is that the agency decision-makers focus attention on environmental concerns, it is not the role of the courts to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively’” (Matter of Village of Kiryas Joel, N.Y. v Village of Woodbury, N.Y., 138 AD3d at 1012, quoting Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d at 416; see Matter of Saint James Antiochian Orthodox Church v Town of Hyde Park Planning Bd., 132 AD3d 687, 687-688 [2015]).
 

 “A lead agency’s determination whether to require a SEIS , . . is discretionary” (Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 231 [2007]). “The lead agency may require a supplemental EIS, limited to the specific significant adverse environmental impacts not addressed or inadequately addressed in the EIS that arise from: (a) changes proposed for the project; (b) newly discovered information; or (c) a change in circumstances related to the project” (6 NYCRR 617.9 [a] [7] [i]; see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d at 231). “The decision to prepare a SEIS as a result of newly discovered information ‘must be based upon ... (a) the importance and relevance of the information; and (b) the present state of the information in the EIS’ ” (Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d at 231, quoting 6 NYCRR 617.9 [a] [7] [ii]). The limitations that apply to a court’s review of an agency’s SEQRA determination, that is, only to ascertain whether the agency took a hard look at the relevant areas of environmental concern and made a reasoned elaboration of the basis for its determination, also apply to the agency’s determination regarding whether a SEIS is needed, and the court may no more substitute its judgment on this point than it may on other aspects of agency decision-making (see Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d at 231-232).
 

 Here, the petitioners contend that a SEIS is needed because Scenic never obtained a jurisdictional determination from the United States Army Corps of Engineers (hereinafter ACOE) validating Scenic’s delineation of wetlands on the subject property. They argue that, prior to issuing the determinations challenged on appeal, the Planning Board was presented with critical new evidence demonstrating that no jurisdictional determination had been issued by the ACOE for the subject property. The petitioners are correct.
 

 Although the Planning Board and Scenic relied upon a February 1, 2007, letter from Dr. Christopher Mallery of the ACOE, which they contend constituted a jurisdictional determination, the letter expressly informed Scenic’s consultants that a 2004 cease and desist order applying to the subject property had been lifted and was not issued in response to any request for a jurisdictional determination. Moreover, although the letter states that the ACOE had reviewed Scenic’s development plans, it did not state that the ACOE had reviewed Scenic’s wetlands delineations. The letter also states that ACOE’s review was based upon Scenic’s then-proposed 139-home plan, not the 497-unit plan at issue in these proceedings, and notes that: “[i]f, at any time during the course of construction, the project [was] modified in such a manner that it would have additional impacts to areas identified on the above-referenced drawing as wetlands and waters of the United States, additional written authorization from this office [would] be necessary prior to the implementation of such modifications.”
 

 Thus, the Planning Board’s reliance on Mallery’s letter as a jurisdictional determination by the ACOE applicable to Scenic’s 497-unit plan was unreasonable and irrational. For the same reasons, the Planning Board’s reliance on two additional letters from the ACOE dated January 5, 2011, and November 28, 2011, respectively, as jurisdictional determinations was unreasonable and irrational. Moreover, since jurisdictional determinations by the ACOE are only valid for five years (see Army Corps of Engineers Regulatory Guidance Letter No. 05-02 [June 14, 2005] [“Expiration of Geographic Jurisdictional Determinations of Waters of the United States”], reprinted in William Want, Law of Wetlands Regulation Appendix 8 [May 2017 Update]), Mallery’s February 1, 2007, letter, even if it did constitute a jurisdictional determination, would have expired by the time of the Planning Board’s March 22, 2013, determinations.
 

 Contrary to Scenic’s contentions, an ACOE jurisdictional determination was required for this project. A SEQRA Final Scoping Document dated June 25, 2008, provided that the Draft Environmental Impact Statement (hereinafter DEIS) was required to “[d]elineate and flag the boundary of all State and Federal Jurisdictional Wetlands in accordance with the methodology provided in the 1987 Army Corps of Engineers Wetlands Delineation Manual and later editions; boundaries to be confirmed by the permit agencies” (emphasis added).
 

 On January 3, 2013, the New York State Department of Environmental Conservation (hereinafter NYSDEC) informed Scenic that, in its opinion, ACOE’s February 1, 2007, January 5, 2011, and November 28, 2011, letters, did not, individually or together, constitute a valid jurisdictional determination, and directed Scenic to obtain a jurisdictional determination from ACOE and submit it to NYSDEC by February 1, 2013. Similarly, on January 7, 2013, the ACOE, in response to a Freedom of Information Act request, confirmed that no jurisdictional determination had ever been made with respect to the subject property. Thus, prior to the Planning Board’s determination, it had been conclusively established that there was no valid jurisdictional determination for the subject property. Under these circumstances, the record establishes that the Planning Board did not take a hard look at the issue of wetlands delineations or make a reasoned elaboration of the basis for its determination regarding that issue (see Matter of Bronx Comm. for Toxic Free Schs. v New York City Sch. Constr. Auth., 20 NY3d 148, 155 [2012]; Matter of Falcon Group Ltd. Liab. Co. v Town/Village of Harrison Planning Bd., 131 AD3d at 1239). Accordingly, the Supreme Court should have annulled the Planning Board’s determinations on this basis.
 

 In addition, pursuant to the Code of the Town of Ramapo, no more than 50% of wetlands or land under water may be counted toward minimum lot area (see Code of the Town of Ramapo § 376-42 [A]). That section of the Code provides that “[t]he application of [section 376-42 (A)] to any particular lot shall be the responsibility of the [Planning] Board at the time of subdivision or site development plan approval.” Since there was no ACOE jurisdictional determination, the Planning Board’s reliance on Scenic’s data delineating federal wetlands was unreasonable and without rational basis. Thus, the Supreme Court should have annulled the Planning Board’s determinations on this basis as well.
 

 The petitioners are also correct that the Planning Board’s resolution dated January 25, 2010, amending the Town’s zoning map, required, inter alia, the creation of a homeowners’ association to manage common areas of the development as a condition of site plan and subdivision approval. Since the Planning Board omitted that condition from its determinations dated March 22, 2013, the Supreme Court should have annulled the determinations on that basis as well.
 

 The parties’ remaining contentions either need not be addressed in light of this determination or are without merit.
 

 Accordingly, the Supreme Court should have granted the petition and annulled the determinations dated March 22, 2013. We remit the matter to the Planning Board, inter alia, for the preparation of an SEIS regarding the presence of wetlands on the subject property (see Matter of Bronx Comm. for Toxic Free Schs. v New York City Sch. Constr. Auth., 20 NY3d at 155-156).
 

 Leventhal, J.P., Austin, Cohen and Duffy, JJ., concur.